Here he here he here he the United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States in this honorable court. Good afternoon, this is Judge Wilson at Tampa, Judge Jordan is in Miami and Judge Branch is in Atlanta and we have one appeal that is scheduled for argument this afternoon. It is the Commissioner of the Alabama Department of Corrections versus Matthew Reeves and Richard Dearman Anderson is here for the appellant and Allison Gulak is here for the appellee Reeves and Mr. Anderson, you may begin with your argument. Thank you, Your Honor. Good afternoon and may it please the court, I'm Richard Anderson on behalf of the Willie Smith case. The addressability is a threshold issue in this case. The district court recognized that early on when it ordered the parties to address that question specifically prior to the states having filed its answer or even its response to the motion for preliminary injunction. Um, ultimately the district court found that he had no reason to depart from Smith. Um, and the unpublished decision of this court in that case that an inmate's failure to make a timely election of nitrogen hypoxia as his method of execution pursuant to section 15 18 82 1 was redressable by the defendants. But there are reasons why the district court should have departed from Smith and why this court should reconsider that and find that Reeves lacks standing. Mr. About the protocols surrounding nitrogen hypoxia. When is it that the state expects to have the protocols in place? We do not have a date certain, Your Honor. I think we expect it to be within months. Um, but I think the district court may have said a matter of weeks. We I don't think we expect it to be just a few weeks. Expect it to be a matter of months, Your Honor. And so by months you mean how many months probably end of April into May possibly. And and so by the protocol, you just mean how the how the drug would be administered. The method of administering the nitrogen hypoxia and having the system in place for that. Well, the district judge says in his order on page seven, he says during oral argument on the pending motion counsel for the Alabama Department of Corrections represented that she expects to quote have everything completely ready to go close quote within the first three months of 2022. And the court then says that based on this representation, the court understands that the Alabama Department of Corrections expects to be able to and that's no longer the case, Your Honor. We have throughout this. We're shooting at a moving target, so to speak. Um, and because there are so many parts to this process and the attorney general's office doesn't control them. Um, we're, you know, we're trying to give the courts the best estimate we can. And I think at this point, the best estimate we can give is that, uh, you know, it may be as late as the end of April or the beginning of May. We're just I wish I could say definitely we can't, Your Honor. But if that's the case, if you're able to execute inmates by nitrogen hypoxia by the end of April, if Mr Reeds had timely completed the election form to elect execution by nitrogen hypoxia be timely done that the state would have been in a position. It would have been prepared to execute him by that form, right? Um, yes, Your Honor, in a in a sense. But of course, as the district court recognized during oral arguments, that wouldn't be the end of the question because Mr Reeves would undoubtedly challenge any nitrogen hypoxia protocol. Um, for some grounds, that's just the reality of death. That would be another day, though. That's not. I mean, that would be an issue for another day, not for us to take into consideration in connection with this appeal, though, right? Um, well, as as to the question of whether the state would be ready to go to execute him. Um, it would be because if there's an ongoing challenge in the federal courts, we're not ready to execute. Uh, if you if you follow, but that issue that issue, Mr Anderson applies to every inmate who has timely elected nitrogen hypoxia is a method of execution, right? You're I think you're right. You're likely to face a number of challenges to whatever protocol you come up with, and they wouldn't necessarily come just from Mr Reeves. You're gonna get those no matter what, right? That is correct, Your Honor. Yes. All right. And and the state amended its statute to permit this method of execution back in 2018. And and so we're in 2022. And the protocols for what was then made available as a method of execution were still waiting on. Correct. That is correct, Your Honor. So, as I understand your argument, it's really with the statute itself. Is that the case that the statute doesn't permit you to, um, afford Mr time election of nitrogen hypoxia? Is that is that your argument? Well, Your Honor, there are two cases from this court's precedent that we rely on, and those are the Florida wildlife case in the port working animals case. Both of those in our brief and ultimately, uh, you know, it's true that redressability all it requires is a favorable order that leads to a significant increase in the likelihood of getting relief. But this court in both for for the wildlife and support working animals look beyond that conclusion to look at two factors that are at issue here. One is whether the relief is can be afforded through the program or the wrong challenged in this litigation. And second, whether the official defendants acting their official capacity have the authority to enforce or to grant the relief. What if what if this court makes a determination if it rules that his A. B. A. Rights were violent period and that he was the state failed to afford him a reasonable accommodation in the way of an out of time election. His A. B. A. Rights were violated. Well, I would, you know, I would direct your honor to looking at Florida wildlife and Florida wildlife is, as you'll recall, uh, Judge Wilson. In that case, both your dissent and the majority opinion recognized that, uh, the court, the district court couldn't grant relief to the interveners in Florida wildlife because the case involved a consent decree that was the subject of the action and a separate declaration that was not subject to that action. In fact, we're subject to a different action. And both you and the majority recognized that the only way the district court could craft relief was through the wrongful act that was subject of the action before the court. And in this case, Mr Reeves entire case turns around this allegation that the defendants created a program intended to assist death row inmates in making the election that was separately required by the statute. So in that respect, we're very similar to Florida wildlife. We have. But aren't you supposed Mr Anderson in deciding standing to assume the validity of the plaintiff's claim and assume that he's going to prevail on that claim? Yes, your honor. And I agree with that. And I think that comports with our reading of Florida wildlife and of the so if a district court finds that your clients violated the A. D. A. And as a matter of enforcing federal law orders your clients to provide him with a reasonable accommodation to make an election. How is that? How is that not redress? We are because the statute, the election process was created by the defendants. In this case, the A. D. A. Violation they're alleged to have caused the one before this court is the, um, the claim that they failed to make the election form quote readily accessible and usable by Mr Reeves, thus preventing him from enjoying the benefit of the election form through a reasonable accommodation. Now, the district court would properly have the power to order the defendants to make changes to their administration of that program. Uh, the election form and any future elections that they had in future changes. But in this case, the act has happened. The election has happened. You're saying you're saying that the district court's remedy is limited by state law for a violation of federal law? No, your honor. I'm saying that under florida wildlife, the reported decision from this court, the the district court's authority is limited to matters before the court and like before the court. But before the court is the question of whether or not he was given a reasonable accommodate. Let me let me give you a let me give you an example. Okay. Which is different than this case. So please understand that it's a hypothetical. Let's assume that you had an inmate who was blind. Okay. And all you did was provide that inmate with a form that he or she could not read. And the claim was that you didn't provide him with a reasonable opportunity under the A. D. A. To make the election. If a district court found that that occurred with the district court have the ability to fashion relief and to force the defendants through injunction to provide that person with someone who could read the form to him so that he could make an election. If the election was an ongoing process that was no, no, same, same, same thing. The election, the period has ended. Mhm. I followed that your honor. And in this case we would say that under florida wildlife and under support working animals, the district court couldn't because the statute is not being challenged in this action. The program that allegedly was created by the defendants is being challenged. No, but the application, the application of the statute is being challenged. The statute is not being challenged on its face, but your client's application of the statute enforcement of the statute. The other, the other point I want to make and then I'll stop on on standing in your answer to the complaint. You admit that the commissioner has the ability to alter amend or make exceptions to the protocol. How is the district court and how are we supposed to take account of that concession in your answer? Your honor, the admission is that yes, the protocol he has the authority to make changes to say covid measures that we're currently implementing. Um, any other things that are within his discretionary authority as commissioner. But the statute in this case, the election statute changed the method of execution, didn't give him that authority. And your comment about the hypothetical of an inmate who's blind actually brings me to kind of the second problem with the district court's order here. Um, that is in his, in his findings that Mr Reeves had an open and obvious disability and that he had an open and obvious need for accommodation. The district court abused its discretion by conflating those two separate questions into one question and used evidence of that, that even at least arguably related to the alleged open and obvious disability as evidence that the alleged specific accommodation was also open and obvious. And we feel that was error. Um, for a number of reasons, you're moving on to the merits now, right? Yes, your honor. Because I think that that your hypothetical is kind of brought that to the floor because I think it's a good one. Um, because a inmate who was blind, who was absolutely blind, obviously could not read a written form. Um, you know, that would be the sort of situation that would be open and obvious. Both the, but you still say that person didn't have, would not have standing. Correct, your honor. Because he wouldn't have redress ability. Correct, your honor. But that's a separate issue in this here on the merits, a person in that situation, you would have those two inquiries as to whether the disability and the need for accommodation were open and obvious would essentially merge. Um, and in this case we don't have that. What we have is an allegation that Mr Reeves suffered from an open and obvious intellectual deficiency or disability. Um, and a allegation that he needed a specific accommodation with regard to a 2018 form. And you know, we look at the evidence that the district court actually considered and what it didn't consider. And uh, even in the consideration of the limited evidence before the court, the district court to the point of abuse of discretion by relying on outdated evidence, ignoring relevant evidence and particularly with regard to whether the open and obvious need for accommodation was present. And there are three categories of evidence. Hold on. Hold on. I think we may have lost Judge Branch, at least on my screen. I don't. You're right. I don't see her either. Yeah. Hold on. We'll stop your time. Okay, let's just let's just figure out what's going on. Yeah. Judge Wilson, I'm sorry to have stepped in. I just didn't see Judge Branch on the screen anymore. I'll go right ahead. Okay, can we find out what's going on with Judge Branch? In my judge, we're gonna try to call her chambers. Okay, thank you. Mhm. Yeah. Mhm.  Mhm. Yeah. Mhm.  Mhm. Yeah. Mhm. Yeah. Uh huh. Mhm. Uh sorry. I just it all of a sudden kicked me out of the system. So I'm sorry if I interrupted the stream of conversation. All right. Mr Hudson. Are we back in session now? Everybody's on. Yes. Your honor. All right. And you can continue Mr Anderson. Thank you. Your honor. Well what I was going to say is that with a with a cognitive or mental disability like that Mr Reeves alleges he has as many courts have recognized particularly the Fifth Circuit but also a number of other circuits and was court relied on. Those are often hidden and difficult to see. Um and another thing about that, you know, a the sort of disability Mr Reeves alleged he has while while Iq is generally thought of as immutable reading ability is not immutable. It can change over time and where where's a blind person might enter prison completely blind. He's not likely to regain his sight and suddenly be able to read. But someone who has limited reading ability can learn to read better. Um and that's relevant here because of the information that the district court had and what it considered and what it effectively ignored. The first idea is this idea that the defendants had constructive knowledge of Mr Reeves Iq and of assessments that were done back around 2000 and 3456 that area with his rule 32 case. Um the district court essentially found that the defendants had constructive knowledge of that because they were or rather the the commissioner is the nominal defendant in habeas proceedings. But as this court knows, the only reason for that is that habeas statute requires that the nominal defendant be the person who has custody. In reality, all of those proceedings are handled by the attorney general's office. A. D. O. C. And Commissioner Dunn had no involvement in them. Um so we can set construction constructive knowledge aside. So next we look at actual evidence before the court and that was the first category is the A. D. O. C. Records. The district court focused on five documents or five incidents very early in Mr Reeves incarceration. None of them were less than uh 14 or 15 years prior to june of 2018. Um sounds like you're um we're reweighing the evidence. No, your honor. We're not because of the issue I told you earlier about the conflation of evidence regarding the disability with evidence regarding the need for an accommodation. And the reason that only two of the documents that the district court cited, both of which were quite old, even speculated about Mr Reeves is reading ability. And uh those documents were from 1998 between 1998 2003. Well, um the court, you know, there were eight witnesses who testified at the evidentiary hearing. That's correct. John, one of whom was Dr Faye, Dr Kathleen Faye. That's correct. And so she testified that reads lacks the ability to understand the form that was used and she uses words like quote more recently with regard to his evaluation. And she says that the form needs an 11th grade education to understand it just has an education which would permit him to read at a first through a fourth grade level. And I mean it just seems to me that alone ought to be sufficient for the court to rely on. Is that a finding of fact that uh you can say no, you're clearly erroneous. The reliance on that your honor for the question of whether it was open and obvious would be erroneous. And the reason for that is that phase testimony for what it was goes to the question of whether Mr Reeves was a qualified individual. The district court did not rely on fake. He's testimony to support the open and but it did make one critical error with regard to fake. He's testimony and that it said that the state did not contradict her opinions. But the state did. Uh the district court heard and we invite this court to listen to the live audio of Mr Reeves reading above well above the reading level that uh Dr Fahey said he had. She said he had a fluency. There's no evidence in the reads had indicated before he'd asked for help to read forms before. That's correct. Your honor. There is no evidence that he asked for help to read forms. I think I know what you're referring to, which of course is the document that the petitioners rely on pretty heavily. This 2015 inmate request slip. Um and in that 2015 inmate request slip, what we're bound by what the district court was in this court should look at is the four corners of document because Mr Reeves had the opportunity to explain what he meant in this document. He submitted declaration. He said nothing about it. The document doesn't communicate an ADA disability. It doesn't say I can't read. It doesn't say I can't read this document that whatever it was that was referred to in this inmate request slip. It simply says I wanted someone to read it to me. That's not a request for ADA accommodation. It's a request for special treatment. Um it doesn't tell any ADA person or I'm sorry ADOC personnel that I don't understand. I can't comprehend the document. All it says is I want someone to read it and importantly the current request in that document is will you bring the papers back to me? Not will you bring the papers back to me and explain to me what they are or help me read them. So as far as that document goes it doesn't inform ADOC certainly not to an open and obvious extent that Mr Reeves can't read and I would note I mean not you know not to put define a point on it with that document. It's in writing. Mr Reeves wrote out his request. Um that can hardly be taken as open and obvious evidence that he requires an accommodation. And so there's no indicates an employee of the commissioner said he possibly cannot read. Oh no. Yes your honor. There are there as I referred to earlier there are two documents from early in his incarceration that speculate that possibly he can't read. But of course we know that he can read uh the district court heard him reading in his uh in his petition for clemency file just yesterday. Mr Reeves relies extensively on his years spent reading the extensive correspondence of people including the mother of one of his attorneys who who that is who the he read a letter from in this inmate phone call that the district court heard. So the you know and the arenas case demonstrates or stands for that proposition that the recency of the records matters for the question of open and obvious because what is open and obvious? It's not what you have to go hunt through decades of records to find uh particularly when it is when those records are belied by more recent records. It's what people see of that person every day. It's what the ADOC inmate or ADOC employees saw of Mr Reeves and what their interactions were like. And there is ample evidence that Mr Reeves was able to communicate that he read, he wrote, he carried reading materials, he requested reading materials and the district court simply failed to grapple with that evidence. Mr Anderson, you you're usually on the other side of the of the ledger for these sorts of arguments and you've got a standard that is sort of difficult to generally meet. So you've got the  likelihood of success on the merits and then you've got abuse of discretion review on appeal. Correct. So how do you get to that sort of abuse of discretion when it allows for a range of choice usually speaking? Well, your honor, as we've relied on this court's decision in Glock v Glock where we the court talked about what abuse of discretion includes. And part of that is quote ignoring or misunderstanding the relevant evidence or basing its decision upon considerations have little factual support. And that's exactly what's happened here. Your honor, the district court has gone. It's not a weighing re weighing of the evidence. It's a first weighing of the evidence because the district court simply didn't grapple with or engage with evidence that cut against its finding. Um but but you know, we have defendants or excuse me, we have a police on appeal in both civil and criminal cases all the time telling us and we generally agree that district courts don't have to lay out every bit of evidence that was introduced, don't have to discuss every piece of evidence in detail, don't have to reject every piece of evidence in detail. We don't usually require that of district courts. Right. That's correct. Your honor. But in this case with the extraordinary relief being sought here and it's extraordinary relief obtained um the amount of evidence that the district court simply didn't, you know, that it relied on a case that points out the problem with using old and outdated evidence. But then it went on to use old and outdated evidence to establish this question of open and obvious. And I think more importantly that there's that kind of legal conflation of two different issues and not just, we're not just saying that the evidence wasn't strong enough to support the existence of an open and obvious disability, but there was effectively no evidence to support an open and obvious need for accommodation. So at the end of the day, there just wasn't evidence to support that finding and that error by the uh, you know, a legal error on a legal question of whether the evidence even even goes to the issues before it. Um, and when a court not only misunderstands the evidence but disregards other evidence and relies on conclusions with little to no factual support, this court has held that it's an abuse of discretion and we would respectfully ask the court to reverse the district court's grant of the preliminary injunction. Mhm. All right. Thank you. Mr Anderson. You preserve some time for a vote. Yes, you're on. We will hear from this to walk on behalf of Mr Reeves. You're on mute. Mr. Lock. My apologies to the court. May it please the court. Allison Dulac, assistant federal defender on behalf of Matthew Reeves. Having just heard the appellants argument, there can be little doubt that this appeal is simply about the weight of evidence here. The district court reviewed thousands of pages of documents held a seven hour evidentiary hearing, listened and observed eight witnesses testify. It read the party's initial and supplemental briefs and took oral argument on the matter in the district court had the benefit of observing the witnesses demeanor, assessing their candor. The district court then weighed that evidence, made credibility determinations and factual findings pursuant to cooper versus Harris and longstanding Supreme Court precedent. This court is required to affirm the trial court's finding so long as it is plausible and reverse only when left with definite and firm conviction that a mistake has been committed and in deciding which side of that line to come down on give singular deference to a trial court's judgment about the credibility of witnesses. And that's proper because various cues that bear so heavily on the listeners understanding of and belief in what is said are lost on an appellate court later sifting through a paper record. And that is precisely what the appellant is asking this court to do. Before you dive into the merits argument headlong, Mr Lac. Can you so we don't forget about it or run out of time on it. Can you address Mr Anderson's comments about redress ability in Article three standing? Uh, yes, Your Honor. Um, obviously, we agree with how this court ruled in Smith. Um, Smith was based on Moody, which we assert was correctly decided. Um, you know, in Smith, this court found that redress ability is really a simple analysis and that the ability of the federal court to fashion effective relief for a violation of federal law, which is what this case is about, is not limited by what state law permits. And that it's really it is. It is. It simply requires the plaintiff to seek a remedy that's likely to redress the injury, which is fairly traceable to the challenge conduct. And that's what it has to be. It just has to be likely and not speculative. And that's really what we said in the border wildlife management case. Is that correct? Yes, Your Honor. Mr Anderson's point in part is that because the election window has run, there is nothing that can be done. What is your response to that? Uh, my response is twofold. Um, one, I think that the fact the argument that there's nothing that can be done is just simply incorrect. I mean, I think the idea that the state could violate federal law and then a federal court is unable to fashion a remedy, um, is an incorrect statement of law. But I think that there is a provision for if lethal injection is considered unavailable, the nitrogen hypoxia becomes the default. And so it's not clear to me why, if there was a violation of federal law, that lethal injection couldn't be considered unavailable as to Mr Reeves and his default method would be nitrogen hypoxia. Okay, thank you. Uh, so the district court in its order supported each of its factual findings with specific citations to the record. And after weighing all the evidence against the documents and the testimony cited by the A. D. O. C. The court found that Mr Reeves is likely to succeed, improving his need for an A. D. O. C. And the district court's determination should remain undisturbed because Cooper tells us a finding that is plausible in light of the full record, even if another is equally or more so must govern. Mr Locke, what would you how would you respond to opposing counsel's argument that the court abused the Reeves alleged disability with Mr Reeves alleged need for a particular accommodation? The assistance in reading the form. Yes, Your Honor, I would direct the court to the district court's order on pages 33 and 34. Um, the court very specifically, um, discussed the evidence that Mr Reeves had presented and concluded that although this efficient to support Reeves Atkins claim in the present case under the A. D. A. It demonstrates that the A. D. O. C. was on notice that Reeves had an I. Q. Score in the high sixties, low seventies, sub average intellectual functioning and have been found to be functionally illiterate a mere two months before it handed him the without an accommodation. And so that that passage alone shows that the court was not just viewing the open and obvious as being his learning disability or cognitive deficiency, but it was applying that to the form that was provided to him as part of the A. D. O. C. Program. So we would disagree that that the district court even completed the standard and in their reply three or in their brief, the in the reply brief, the commissioner says that you failed to distinguish the Fifth Circuit's decision in Lindam versus Harris County, where the court noted that the knowledge of a disability is different from knowledge of the resulting limitation, and it is certainly different from knowledge of the necessary accommodation. How are you going to distinguish window? Well, I would distinguish Windham in the fact that I don't think that's what the district court did. Um, I I don't think the district court was very clear about the fact that Mr Reeves required an accommodation and that that was in fact what was open and obvious. It was not just that he had a disability is and this entire case has been about the fact that Mr Reeves has cognitive deficiencies that affected his reading and language. There was an expert, as you noted, Judge Wilson that testified regarding that. And then the A. D. A. Violation is about reading and comprehending a form. And so to imply that the district court gave a disjointed ruling is just simply incorrect. Mhm. Yeah, with regard to the, um, evidence, the documentary evidence and Mr Anderson's arguments about the recency of some of that evidence and the staleness of some of that evidence. The district court also mentioned that in 2018, the commissioner had filed the brief acknowledging, uh, Mr Reeves is intellectual, uh, disability problems. Can you comment on that? Yes, Your Honor. Uh, first, I would say that that the, um, Mr Reeves is habeas petition from 2018 that the district court reference is just one of many facts, um, that the district court used to make its decision. Um, and the case law is clear that the district court's account of evidence is plausible in line of the record viewed in its entirety. The Court of Appeals may not reverse, even though it's convinced that if it was sitting as the trier fact it would have weighed the evidence differently. So that's to start with, as well as the fact that this, this information certainly can be imputed to the commissioner. It is as part of general agency principles. And I know that, um, the appellants have cited cases of Howard and Pena, but those in fact are really red herrings because they, while they are title two ADA cases, they are not on all fours in the sense that they are requesting compensatory damages, um, which is not equitable relief, which is all that Mr Reeves is seeking. And that's important because in order to recover compensatory damages under a title two, you require to show intentional discrimination, which requires actual knowledge. And so, um, Mr. Reeves is not in the same position as perhaps another plaintiff in a title two case that was, is required to show actual knowledge. In addition, Your Honor, we also, I think, cited in our brief, the fact that, um, the commissioner's general counsel at the ADOC received copies of all of these, uh, documents, the joint habeas checklist and other documents that were served in Mr. Reeves' habeas proceedings. So it was not just the attorney general's office that received these pleadings and this information, which would have contained Mr. Reeves' evaluations, testing results. The state retained an expert that conducted a neuropsych evaluation, which concluded his IQ as 68. And so there was, there's a lot of information that should be imputed to the commissioner. And just briefly, if I could address, um, since, uh, Mr. Anderson raised the point, um, regarding the cases from the fifth circuit and open and obvious. Um, the bulk of those cases are either employment cases or they are cases where the, uh, plaintiff is an arrestee or a detainee. So they are someone that's been in the custody and control of the public entity for a very short period of time. And so it is a much, um, more, uh, valid concern to say, well, how are we in one of the cases, whereas here, Mr. Reeves has spent more than half his life in the custody and control of the Alabama department of corrections. And so they certainly have a much better opportunity and should, uh, observed him and his actions. And they did, and they commented and noted for many years, um, that he had poor communication skills, that he may have limited intellectual disabilities, that he is learning disabilities. You possibly can't read. I mean, and so those cases I would say are just factually very dissimilar and not analogous. And as far as arenas, which, um, the state often cites, um, it is first of all, a district court case, but secondly, that is also factually dissimilar. Um, that is an inmate who self-reported when they arrived in the department of corrections that they had previously had suicide attempts three years prior. Um, and that they hadn't been off their medication for several years. They were doing fine. And then they were in the correction system for a year and had no problems. That's not our scenario here. From day one, when Mr. Reeves arrived, he was, it was noted by the department of corrections staff that he had cognitive deficiencies. Well, they use words like may have limited intellectual disabilities and possibly can't read. Yes, that's true. To make a determination that, uh, he does have limited intellectual disabilities and he can't read. Well, it's enough. I mean, it's enough to have him on their radar screen, if you will. It's enough for them to have at least knowledge that he is likely to be unable to read a form that's drafted for someone that reads on an 11th grade level, um, which is what happened here. So it's more than speculative, it's likely. That's your argument? I, my argument is that they should have known and they did know, but I would say to, to your question that they, they should have known. And I would also point out to the court that, you know, the law changed in 2002 following Atkins versus Virginia. Um, and so essentially no one on death row should have be intellectually disabled. Uh, and so you will often see in, in an inmate's records that post 2002, you'll see, you will not see the same, um, comments regarding intellectual disabilities and, um, learning disabilities that you would have early on. And that's historically been the case. And you see that in Mr. Reed's records as well. Okay. Uh, if, if the court has no further questions, um, I'll conclude where I began by stressing that the clearly erroneous standard for the appellant to meet is high and citing Anderson, it requires that this court may not reverse just because it would have decided the matter differently and the district court's grant of a preliminary injunction as well reason it's supported by ample evidence and his factual findings were not clearly erroneous and his conclusion was not an abuse of discretion and the preliminary injunction should be affirmed. Thank you. Thank you, miss. We'll hear from Mr. Anderson on rebuttal. Thank you, your honor. Um, the first thing I want to go to is a critical error in the district court's opinion that miss Duloc pointed this court to, and that is the conclusion on pages 33 and 34 of the order granting preliminary injunction that quote ADOC was on notice that reads IQ scores, sub-average intellectual intellectual functioning, and it's been found to be quote, functionally illiterate a mere two months before it handed them the election form that your honor is facially erroneous. It is absolutely uncontestably wrong. And the reason is that there was no evidentiary hearing in the habeas matter. There were no evaluations done in context of the habeas matter. All of the evaluations were done a decade before in the rule 32 matter in state court. Now those evaluations, those old evaluations were referenced, but it is found functionally illiterate quote a mere two months before he was handed the election form that is, that is not only wrong, but it, it is absolutely flies in the face of the evidence. The district court heard of Mr. Reeves reading a letter that was considerably higher than what his expert said he could read. And it also, uh, just, uh, is completely contradicted by all of the more. Uh, recent evidence, uh, regarding Mr. Reeves repeated requests for reading materials, the observations of Americans with disability act standard, a lower standard than the Atkins versus Virginia standard. Um, I would say probably so your honor. Uh, it's a different standard though, because one of the things it's a broader standard, isn't it? Correct. Correct. Your honor. Uh, but one of the things we're concerned with in ADA cases is accommodations, the necessary accommodations, and that's not a concern in an Atkins case. So we would. Uh, reject the idea that a finding regarding an Atkins case and a disability, intellectual disability, or possibility of one in an Atkins state really doesn't tell us much about whether a need for accommodation is open and obvious a decade later. But the Americans with disability act, um, standard is not as high as the Atkins versus Virginia. That is correct. Your honor. I think that is fair to say. Um, and I do want to note, of course, that to the extent that this court thinks that it was appropriate to, um, impute knowledge of the habeas proceedings to the ADOC, I think it would only be fair to impute the conclusion of those proceedings as well, which is that Mr. Reeves is not intellectually disabled. Um, and whether that, but Mr. Anderson, the, the commissioner filed a response to the habeas petition. Instituted by Mr. Reeves. And that was done in either 17 or 18. And the commissioner made certain statements about Mr. Reeves situation, right? What was the district court able to glean from that? And what could it fairly infer or discern from that? According to the district court, that response by the commissioner. Said it cited to the results of Mr. Reeves, neurological testing, including Dr. Goff's finding that Mr. Reeves was functionally illiterate, that he had an IQ of 71 and he could only read at a third grade level. It also highlighted Dr. King's determination that Mr. Reeves could read only at a fifth grade level and had an IQ of 68 and fell within the borderline range of intellectual functioning and the state circuit court's finding in the post-conviction proceeding that Mr. Reeves intellectual functioning was sub-average couldn't the district court take all of that, all of those statements as evidence of what the commissioner and the warden knew at that time about Mr. Reeves. Well, your honor, we think that in reality, the fact that the commissioner was the nominal defendant does not mean that the commissioner knew all of these contents, but even if, even if you do treat those as indicative of the commissioner's knowledge, all they really speak to is at best the presence of a disability, they don't speak to the need, the separate inquiry of the need for an accommodation in 2018. And I see my time has expired, but, uh, for the reasons that we've cited here and in our brief, um, unless there are any further questions, the state would ask the court to, uh, find an abuse of discretion by the district court, both on the, uh, issue of redressability and on the issue of the open and obvious disability and need for accommodation. Thank you, your honors. Thank you, Mr. Anderson and Mr. Locke. And that completes our argument for this afternoon. And the court is adjourned. Thank you.